

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

DEUTSCHE BANK SECURITIES, INC.,

                        Plaintiff,

           - against -

JP MORGAN CHASE, INC.

and

BRIAN ZEITLIN and YALE J. BARON

                   Defendants.

**04 CV 07913**

**COMPLAINT**

ЄCF.

**JUDGE PATTERSON**

**JURY TRIAL**
**DEMANDED**

Plaintiff Deutsche Bank Securities, Inc. ("DBSI," the "Company," or "Plaintiff"), by its attorneys, Dorsey & Whitney LLP, complaining of defendants JP Morgan Chase, Inc. ("JP Morgan Chase"), Brian Zeitlin ("Zeitlin"), and Yale J. Baron ("Baron") alleges as follows:

## I. THE PARTIES

1.    Deutsche Bank Securities is a corporation organized under the laws of Delaware with its principal place of business in New York, New York.

2.    JP Morgan Chase is a [location] corporation with its principal place of business in New York, New York.

3.    Zeitlin is a citizen of the State of New York.

4.    Baron is a citizen of the State of New Jersey.

## II. JURISDICTION AND VENUE

5.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the cause of action arises under computer abuse and fraud act.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District and the Defendants reside in this District.

### III. FACTUAL ALLEGATIONS

#### The Business of Deutsche Bank Securities

7.     Deutsche Bank Securities is a publicly traded company on the NASDAQ and offers financial services in over seventy countries. Deutsche Bank Securities is an affiliate of Deutsche Bank AG, a German banking corporation. One of the key financial services Deutsche Bank Securities offers is collateralized debt obligations. CDOs are highly complex and sophisticated investment tools that consist of securitized interests in pools of assets. Assets – called collateral – usually comprise loans or debt instruments. Investors bear the credit risk of the collateral, and within each CDO, Deutsche Bank Securities offers multiple types of securities. These securities bundles are called tranches and offer investors various maturity and credit risk characteristics. Deutsche Bank Securities earns income on the CDOs through the payment of underwriting and structuring fees and various principal investments in the CDOs, the provision of general advisory services in connection with CDO restructurings, and various other services.

8.     A CDO can be structured in different ways. In 2003, Deutsche Bank Securities created and developed a unique CDO structure called a Credit Opportunities Fund. This structure has unique features designed to allow placements of significant portions of the fund's capital structure with hedge fund and hedge fund like investors and allows for additional issuance of CDO tranches and equity interests post closing of the fund. Under this structure, principal and interest payments to investors come from both collateral cash flows as well as sales of collateral. Payments to tranches are not contingent on the adequacy of the collateral's cash

2

flows, but rather the adequacy of its market value. Should the market value of collateral drop below a certain level, payments are suspended to the equity tranche. If it falls even further, more senior tranches are impacted.

9.      The world-wide market for all CDOs is $100 billion in new issuance and $1.5 billion in revenue. In 2003 Deutsche Bank Securities ranked first in new issue volume for CDOs. In 2003, Deutsche Bank was awarded the prestigious International Finance Review CDO House of the Year Award. Deutsche Bank Securities ranks in the top four financial institutions in the CDO marketplace. In 2004, Deutsche Bank Securities continued to hold a premier market position with respect to CDOs. Within each one of these financial institutions, there are a finite number of people with the expertise to manage these complex financial tools and advise CDO issuers and investors. As such, Deutsche Bank Securities and its competitors work diligently to train their personnel in this unique expertise and maintain their current clients. It can take anywhere from 3 to 5 years to train a new employee in this highly sophisticated area which requires both a technical aptitude, document analysis skills, and relationship management skills to deal with client and investors.

## The Defendant JP Morgan Chase

10.      JP Morgan Chase is also a global financial institution and one of Deutsche Bank Securities' primary competitors. According to JP Morgan Chase's official website, JP Morgan Chase has assets of approximately $1.1 trillion and operations in more than 50 countries. JP Morgan Chase has investment banking, financial services for consumers and businesses, financial transaction processing, asset and wealth management, and private equity. The headquarters for JP Morgan Chase is located in New York. J.P. Morgan Chase reports on six

3

lines of business: 1) Asset & Wealth Management; 2) Card Services; 3) Commercial Banking; 4) Investment Banking; 5) Retail Financial Services; and 6) Treasury & Securities Services.

## The Defendant Zeitlin

11.    On August 20, 2004, Zeitlin resigned from Deutsche Bank Securities. At the time of his resignation from Deutsche Bank Securities Zeitlin was a Deutsche Bank Securities Managing Director.  Only 12% of the employees within Deutsche Bank Securities' Global Markets have the title of Managing Director, which is the highest corporate level title in the Company.

12.    In 2002, Zeitlin was offered an exceptional equity award called the Key Employee Equity Plan ("KEEP") as one of a select group of key individuals who were critical to the sustained further success and direction of the Deutsche Bank Securities Group.  Under the KEEP, Zeitlin was awarded EUR 2,000,000 in compensation to reward and retain him.

13.    In order to be eligible for this exceptional monetary award, Zeitlin was required to agree to the KEEP Terms and Conditions Form.  The provisions of the KEEP Terms and Conditions Form at issue on this motion require Zeitlin, if he were to resign from Deutsche Bank Securities, to provide Deutsche Bank Securities a 90-day-notice period, during which time he could not compete with Deutsche Bank Securities.  Zeitlin also agreed in that KEEP Terms and Conditions for that during his employment and for 3 months after the termination of his employment with Deutsche Bank Securities, (which would commence at conclusion of the 90-day notice period), he could not, directly or indirectly, solicit or entice away key Deutsche Bank Securities employees.  The full applicable provisions of the KEEP Terms and Conditions are as follows:

> As stated in the KEEP documentation, in order to be eligible to receive a KEEP Award, you must agree to the following changes

4

to the terms and conditions of your employment with Deutsche Bank Securities Inc (DB) by the close of business on 31 August 2002. These revised terms will form part of your terms and conditions of employment and are independent of the Rules of KEEP.

1.    Notice Period

Termination of employment by you will be subject to three months written notice (the "Notice Period"). During the Notice Period,

(i)    You will receive only your salary and benefits until your termination date, and

(ii)    You will continue to devote your full business time to any duties as may be directed by DB [Deutsche Bank Securities]. You may not perform any services for any other employer during the Notice Period unless DB agrees in writing. DB may choose to place you on paid leave during the Notice Period. In this case, unless DB agrees in writing, you agree for the remainder of the Notice Period not to engage in any business, whether as an employee, consultant, director or adviser, that is in direct or indirect competition with any active or planned business of Deutsche Bank Securities AG or any of its subsidiaries (collectively "Deutsche Bank Securities"), included in the Competitor List (as amended from time to time) found on the Global Compensation website (http://hr.intranet.db.com/dcomp). You will continue to owe obligations of trust and confidence to DB during the Notice Period and any intellectual property rights or inventions created by you during this period will be the property of DB. For avoidance of doubt, any notice period that DB is required to give to you remains unchanged.

*          *          *

3.    Non-solicitation

You agree that during your employment and for 3 months thereafter, you will not, directly or indirectly, solicit or entice away, or endeavor to solicit or entice away any individual person who is employed or engaged by Deutsche Bank Securities either at Vice President level or above or in a managerial, executive or technical capacity or who is in possession of confidential information belonging to Deutsche Bank Securities and with whom you have had business dealings during the course of your

5

employment in the 12 month period immediately prior to the termination date.

14.    With regard to the Notice Period, Deutsche Bank Securities has neither agreed in writing, nor in any other form, to permit Zeitlin to compete with Deutsche Bank Securities prior to the expiration of the ninety day notice period. Moreover, JP Morgan Chase is one of the competitors listed on the Competitor List found on the Global Compensation website.

15.    The Terms and Conditions of the KEEP also obligated Zeitlin not disclose any Company confidential information during the term of his employment with Deutsche Bank Securities or an any time after it. The Terms and Conditions define "confidential information" to include "any trade secrets," "business plans" and "strategies."

### The Defendant Baron

16.    On or about April 29, 2001, Baron was hired by Deutsch Bank in the CDO Group as a Vice President and has been responsible for all aspects of CDO executions and supervised teams of employees who executed CDOs. In April, 2003 Baron was promoted to the title of Director.

### Deutsche Bank Securities' Reasonable Efforts to Protect Its Confidential, Proprietary and Trade Secret Customer Information

17.    Deutsche Bank Securities has procedures in place to protect its client and supplier information and strategic information from theft. In addition to password protection, which limits access to the company's computer databases to authorized employees only, Deutsche Bank Securities only allows employees to access those sectors of the computer network for which each employee has a "need to know" the information for the employee has responsibility. Deutsche Bank Securities also has several policies in place that are designed to protect its confidential and proprietary information. Deutsche Bank Securities requires its employees to sign agreements restricting the use of its confidential, proprietary and trade secret information and valuable

6

computer data during and after an employee's tenure with the Company and restrict the ability of

the former employees to recruit or hire its employees. These polices and the agreements are set

forth below.

18.    All Deutsche Bank Securities employees in the United States are required to

understand and abide by Deutsche Bank Securities' Code of Professional Conduct. The Code of

Professional Conduct's key components for purposes of this affidavit are as follows:

- IMPLEMENTING THE CODE OF CONDUCT (DBA Management): Senior management of each DBA operating unit has direct responsibility for compliance with all legal and regulatory requirements concerning their unit. Management, at all levels, has the responsibility to be knowledgeable of applicable laws, rules and regulations and to establish policies, practices, procedures and internal controls that ensure compliance. It is management's responsibility to ensure that employees, as well as any other individuals who are subject to DBA Compliance policies, understand the applicable laws, rules and regulations, are kept up-to-date of any changes, and ensure compliance with them. Management must ensure that appropriate organizational and control mechanism structures and process are implemented to achieve this.

- IMPLEMENTING THE CODE OF CONDUCT (DBA Employees): All employees must have reasonable knowledge of the laws, rules and regulations applicable to their business area. All employees should understand that they are expected to comply with both the letter and spirit of all laws, rules and regulations . . . .

- OUTSIDE EMPLOYMENT AND BUSINESS ACTIVITY: All DBA employees are prohibited from taking for themselves business opportunities that are through the use of DBA property, information or position. No employee may use corporate property or information, or their corporate position for personal gain, and no employee may compete with DBA. Competing with DBA may involve engaging in the same line of business as DBA, or any situation where the employee takes away from DBA opportunities for sales, purchases of property, products services or interests.

- ACTING ON BEHALF OF DBA (Non-Solicitation of DBA Customers and Employees): In order to protect confidential and proprietary information . . . obtained during an employee's employment, and to protect DBA's relationship with DBA customers, during the term of their employment and for ninety days following separation, an employee may not, directly or indirectly, solicit or facilitate obtaining business from any DBA client, in any case other than for DBA during their employment; induce or attempt to induce any DBA client to reduce or

7

terminate its business with DBA; or solicit or encourage any employee to leave DBA.

## Deutsche Bank Securities' Computer Policies

19.     Deutsche Bank Securities' Human Resources Policies provide that Electronic Media Systems which includes e-mail and internet access "must be used solely to conduct Bank business and may not be used for personal commercial or private ventures." The policy is clear that "employees with corporate e-mail accounts must use such accounts to send and receive business-related e-mails; personal e-mails may not be used to conduct corporate business." The policy further provides that "[a]ll messages, data and information composed, sent, or received on electronic media systems are the property of DBA." On April 21, 2001, the defendant Baron signed an Employee Acknowledgment form stating that he had read these policies, understood them and that he agreed "to comply" with them.

## Zeitlin's Recruiting of Deutsche Bank Securities' Employees

20.     Beginning in June 2004, Zeitlin had started recruiting other members of his staff at the Deutsche Bank Securities CDO group to join him at a competing firm. At some point Zeitlin worked with a corporate head hunter and explored the possibility of moving himself and others whom he could recruit from Deutsche Bank Securities to JP Morgan Chase. Not surprisingly, JP Morgan Chase was receptive to Zeitlin's inquiries, and a dialogue between JP Morgan Chase and Zeitlin began. Then, on August 20, 2004, Zeitlin and four other Deutsche Bank Securities employees from the CDO group, Yale Baron, James Kane, Steven Weinreich and James Millard, resigned from Deutsche Bank Securities to join JP Morgan Chase's CDO group where Baron, Kane, Weinreich and Millard were to report to Zeitlin.

## The Defendants' Theft of Deutsche Bank Securities' Computer Data

8

21.    Between July 28, 2004 and August 17, 2004, between three weeks and three days before the resignations of Zeitlin, Baron and the three other CDO Deutsche Bank Securities employees, that the defendant Baron, while still employed by Deutsche Bank Securities, sent from his corporate email account to a personal email account, five emails, encompassing nine different confidential and proprietary documents belonging to Deutsche Bank Securities', including but not limited to, a proprietary CDO model for the Deutsche Bank Credit opportunities Funds Product, client lists which include CDO investors and CDO issuers, term sheets, sample engagement letters, a sample warehouse agreement and proprietary internal marketing documents.    The personal email account is annyale@msn.com.    Ann is the name of Baron's wife, both of whom, according to Company records, reside in New Jersey.    These confidential and proprietary document belonging to Deutsche Bank Securities provide the defendants with client and supplier information for the CDO Division which have taken Deutsche Bank Securities many years and the expenditure of considerable sums of money to develop and a blue print of the Deutsche Bank Securities' CDO business which also has been developed over many years with enormous investments of employee time, effort and Company funds.

## COUNT I
### (Against JP Morgan Chase, Zeitlin and Baron)

### Computer Fraud and Abuse Act

22.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 21 and incorporates them herein by reference.

23.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., permits any person who suffers damage or loss by reason of  criminal activity prohibited by this federal criminal statute to bring a civil action for damages and injunctive relief.

24.    From on or about August 11, 2004 to on or about August 17, 2004, Baron, on behalf of JP Morgan Chase, Zeitlin and himself, knowingly and with intent to defraud, accessed protected computers without authorization and exceeded authorized access, to wit, the computer network and a laptop computer owned by Deutsche Bank Securities, and by means of such conduct furthered the intended fraud and obtained things of value, to wit, valuable client and supplier information and business information belonging to Deutsche Bank Securities, in violation of federal criminal law, 18 U.S.C. § 1030(a)(4).

25.    As a result of the Defendants' violation of 18 U.S.C. § 1030(a)(4), their conduct involved and caused a loss aggregating at least $5,000 in value, including the cost of the forensic investigation conducted in response to the defendants' offenses and the cost of conducting a damage assessment of the defendants' offenses.

26.    By reason of the acts alleged herein, Deutsche Bank Securities has been damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to protect its confidential and proprietary client supplier and strategic business information, and other business information, its client goodwill, its workforce and other legitimate business interests.

**COUNT II**
**(Against JP Morgan Chase, Zeitlin and Baron)**

**Computer Fraud and Abuse Act**

27.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 26 and incorporates them herein by reference.

28.    From on or about August 11, 2004, to on or about August 17, 2004, the Defendants, knowingly and intentionally accessed a protected computer without authorization, and as a result of such conduct obtained information from the protected computer client and

10

supplier information, and strategic business information, and the conduct involved interstate

communications between New York and New Jersey in violation of federal criminal law, 18

U.S.C. § 1030(a)(2)(C).

29.     As a result of the Defendants' violation of 18 U.S.C. § 1030(a)(2)(C), the

defendants' conduct involved and caused a loss aggregating at least $5,000 in value, including

the cost of the forensic investigation conducted in response to the defendants' offenses and the

cost of conducting a damage assessment of the defendants' offenses.

30.     By reason of the acts alleged herein, Deutsche Bank Securities has been damaged

in an amount to be determined at trial and because its remedy at law is inadequate, seeks

injunctive relief to protect its confidential and proprietary client, supplier and strategic business

information, price information and other business information, its client goodwill, its workforce

and other legitimate business interests.

## COUNT III

### Misappropriation Of Trade Secrets

31.     Plaintiff repeats and realleges the allegations of paragraphs 1 through  and

incorporates them herein by reference.

32.     The defendants Zeitlin and Baron, aided and abetted by JP Morgan Chase, have

misappropriated and have used and continued to use Deutsche Bank Securities' trade secret

protected client and supplier and strategic business information.

33.     The defendants have exploited and made wrongful use of Deutsche Bank

Securities' trade secrets and have exploited these trade secrets to compete unfairly against

Deutsche Bank Securities.

34.     By reason of the acts alleged herein, Deutsche Bank Securities has been damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to enjoin the defendants from continuing to use or disclose their trade secret protected client and supplier information and their strategic business information.

**COUNT IV**

**Breach of Contract**

(Against Zeitlin for Breach Notice Period)

35.     Deutsche Bank Securities repeats and realleges the allegations of paragraphs 1 through 34 and incorporates them herein by reference.

36.     On or about August 26, 2002, Zeitlin availed himself of the Key Employee Equity Plan ("KEEP") offered to key, high level Deutsche Bank Securities employees that included a Euro 2,000,000 equity package that was designed to retain and reward him.  In exchange for this extraordinary equity disbursement, Zeitlin expressly agreed, among other things, to a 90-day Notice Period applicable in the event Zeitlin decided to terminate his employment with Deutsche Bank Securities.  During that 90-day-period commencing with Zeitlin's notice to terminate his employment, Deutsche Bank Securities agreed to provide Zeitlin with his salary and benefits and in return Zeitlin agreed for 90 days: a) to continue to devote his full business time to any duties as may be directed by Deutsche Bank Securities during the Notice Period; b) not to perform any services for any other employer during the Notice Period unless Deutsche Bank Securities agrees in writing; and c) not to engage in any business, whether as an employee, consultant, director or adviser, that is in direct or indirect competition with any active or planned business of Deutsche Bank Securities AG or any of its subsidiaries.

37.     On or about August 20, 2004, Zeitlin provided Deutsche Bank Securities with notice that he intended to terminate his employment with Deutsche Bank Securities.  As such,

and pursuant to the KEEP agreement, Zeitlin is contractually obligated to remain employed by Deutsche Bank Securities and comply with the terms of the KEEP agreement listed above through on or about November 18, 2004.

38.    According to JP Morgan Chase attorneys, Zeitlin intends to begin working at JP Morgan on or about October 15, 2004, prior to November 18, 2004, and in direct violation of the KEEP agreement.

39.    By reason of the acts alleged herein, Deutsche Bank Securities has been damaged in an amount to be determined at trial, and because its remedy at law is inadequate, seeks injunctive relief to enforce the KEEP's 90-day Notice Period through on or about November 18, 2004.

**COUNT V**

**Breach of Contract**

(Against Zeitlin for Breach of Non-Solicitation Agreement)

40.    Deutsche Bank Securities repeats and realleges the allegations of paragraphs 1 through 39 and incorporates them herein by reference.

41.    On or about August 26, 2002, Zeitlin availed himself of the KEEP equity award only offered to key, high level Deutsche Bank Securities employees that included a Euro 2,000,000 equity package that was designed to retain and reward him.    In exchange for this extraordinary equity disbursement, Zeitlin expressly agreed, among other things, not to engage in any of the following conduct during his employment and for 3 months after the termination of his employment, which commenced after the completion of his 90-day Notice Period:

> directly or indirectly, solicit or entice away, or endeavor to solicit or entice away any individual person who is employed or engaged by Deutsche Bank Securities either at Vice President level or above or in a managerial, executive or technical capacity or who is in possession of confidential information belonging to Deutsche

13

Bank Securities and with whom you have had business dealings
during the course of your employment in the 12 month period
immediately prior to the termination date.

42.     On August 20, 2004, the same day that Zeitlin gave his termination notice, four

Deutsche Bank Securities key employees who worked directly with Zeitlin in the CDO group

also gave notice that they intended to terminate their employment with Deutsche Bank

Securities.

43.     In breach of his agreement with Deutsche Bank Securities, Zeitlin directly

solicited and enticed away these four employees who were managerial, executive or technical

employees who possessed confidential information belonging to Deutsche Bank Securities.  In

addition, Zeitlin had extensive business dealings with each of these Deutsche Bank Securities

employees during the 12-month-period immediately preceding their termination notice.  As such,

and pursuant to the KEEP agreement, Zeitlin violated the contractual terms of the KEEP

agreement.

44.     By reason of the acts alleged herein, Deutsche Bank Securities has been damaged

in an amount to be determined at trial and because its remedy at law is inadequate, seeks

injunctive relief to enjoin Zeitlin from continuing to solicit or entice away additional Deutsche

Bank Securities employees.

**COUNT VI**

**Breach of Fiduciary Duty and Duty of Loyalty**

(Against JP Morgan, Zeitlin and Baron)

45.     Deutsche Bank Securities repeats and realleges the allegations of paragraphs 1

through 44 and incorporates them herein by reference.

46.     As a Managing Director of Deutsche Bank Securities, Zeitlin owed Deutsche

Bank Securities a fiduciary duty of the utmost good faith and loyalty, including a duty of candor,

14

a duty not to act in any manner inconsistent with the best interests of Deutsche Bank Securities, a duty not to exploit in competition with Deutsche Bank Securities the confidential and proprietary knowledge and information about Deutsche Bank Securities' client and supplier and strategic business information which were entrusted to him by Deutsche Bank Securities.

47.    As a Director of Deutsche Bank, Baron, owed Deutsche Bank Securities a fiduciary duty of the utmost good faith and loyalty, including a duty of candor, a duty not to act in any manner inconsistent with the best interests of Deutsche Bank Securities, a duty not to exploit in competition with Deutsche Bank Securities, the confidential and proprietary knowledge and information about Deutsche Bank Securities' client and supplier and strategic business information which were entrusted to him Deutsche Bank Securities.

48.    As a Managing Director of Deutsche Bank Securities, Zeitlin, aided and abetted by JP Morgan Chase, violated his fiduciary duties and duties of undivided loyalty by intentionally, secretly, and wrongfully recruiting Deutsche Bank Securities employees to leave their employment at Deutsche Bank Securities to join a direct competitor, JP Morgan Chase while Zeitlin was still employed by Deutsche Bank Securities.

49.    Zeitlin and Baron, aided and abetted by JP Morgan Chase, violated their fiduciary duties and duties of individual loyalty by stealing Deutsche Bank Securities confidential and proprietary and trade secret protected client and supplier and strategic business information, while they were still employed by Deutsche Bank  Securities.

50.    By reason of the acts alleged herein, Deutsche Bank Securities has been damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to enjoin Zeitlin from recruiting additional Deutsche Bank Securities employees.

**COUNT VII**

**Tortious Interference With Zeitlin's Contract**

15

(Against JP Morgan Chase)

51.     Deutsche Bank Securities repeats and realleges the allegations of paragraphs 1 through 50 and incorporates them herein by reference.

52.     As alleged in paragraph 35 through 45, Defendant Zeitlin breached his contractual obligations to Deutsche Bank Securities in his KEEP agreement relating to the Notice Period and Non-Solicitation provision.    Defendant JP Morgan Chase intentionally and unjustifiably interfered in the aforementioned contractual breaches by facilitating Zeitlin to solicit and entice away Deutsche Bank Securities employees to JP Morgan Chase and by encouraging Zeitlin not to honor his 90-day Notice Period to which he agreed upon receiving the KEEP package from Deutsche Bank Securities.    Indeed, JP Morgan Chase knew that Zeitlin had these contractual obligations to Deutsche Bank Securities, but despite this knowledge, induced Zeitlin to breach his Notice Period and Non-solicitation agreements.

53.     By reason of the acts alleged herein, Deutsche Bank Securities has been damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to preclude JP Morgan Chase from continuing to induce Zeitlin to breach these provisions of his agreements with Deutsche Bank Securities.

## COUNT VIII

### Tortious Interference With Contractual Relations

(Against Defendants JP Morgan Chase and Zeitlin)

54.     Deutsche Bank Securities repeats and realleges the allegations of paragraphs 1 through 53 and incorporates them herein by reference.

55.     As alleged in paragraph 35 through 44, Zeitlin breached his obligations to Deutsche Bank Securities by wrongfully terminating his employment with Deutsche Bank Securities.    JP Morgan Chase intentionally and unjustifiably interfered with Zeitlin's contractual

obligations to Deutsche Bank Securities. Indeed, JP Morgan Chase knew that Zeitlin employed by Deutsche Bank Securities, but despite this knowledge, induced Zeitlin to breach his at-will employment agreement, knowing that at the same time Zeitlin was breaching his fiduciary duty of undivided loyalty to Deutsche Bank Securities by encouraging and facilitating him to recruit Deutsche Bank Securities employees for JP Morgan Chase. Defendant J.P. Morgan employed wrongful means in interfering with Zeitlin's employment by knowingly and fraudulently inducing Defendant Zeitlin to breach his fiduciary duty to Plaintiff Deutsche Bank Securities.

56.    As alleged in paragraph 20, four of Deutsche Bank Securities' employees breached their obligations to Deutsche Bank Securities by wrongfully terminating their employment with Deutsche Bank Securities. Zeitlin intentionally and unjustifiably interfered with the four employees' contractual obligations to Deutsche Bank Securities. Indeed, Zeitlin knew that they were employed by Deutsche Bank Securities, but despite this knowledge, induced them to breach their at-will employment agreement. Zeitlin employed wrongful means in inducing the breach of these employment agreements because he was breaching his fiduciary duty of undivided loyalty to Deutsche Bank Securities to recruiting Deutsche Bank Securities employees for JP Morgan Chase.

57.    By reason of the acts alleged herein, Deutsche Bank Securities has been damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to preclude JP Morgan Chase from continuing to interfere with Zeitlin's contractual obligations to Deutsche Bank Securities, and Zeitlin from continuing to interfere with the contractual obligations of all employees of Deutsche Bank Securities.

## COUNT VIIII

### Unfair Competition

(Against Defendants JP Morgan Chase, Zeitlin and Baron)

17

58.     Deutsche Bank Securities repeats and realleges the allegations of paragraphs 1 through 57 and incorporates them herein by reference.

59.     Baron, on behalf of JP Morgan Chase, Zeitlin and himself, has willfully violated Deutsche Bank Securities' Code of Professional Conduct and by misappropriating Deutsche Bank's valuable client and supplier information and confidential business plan. The defendants Zeitlin, Baron, and JP Morgan Chase, have engaged in unfair competition with Deutsche Bank Securities by such misappropriation and by the fact that they have used and continue to use the trade secret protected client and supplier and business information to unfairly compete with Deutsche Bank Securities.

60.     Zeitlin has engaged in unfair competition with Deutsche Bank Securities by unlawfully soliciting four employees of Deutche Bank Securities, while still employed there, in direct violation of the contractual terms of the KEEP agreement.

61.     By reason of the acts alleged herein, Deutsche Bank Securities has been damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to preclude JP Morgan Chase from continuing to unfairly compete with Deutsche Bank Securities.

WHEREFORE, Plaintiff prays for the following relief:

a.      enjoining Zeitlin and Baron from soliciting or conducting business with any of Deutsche Bank Securities CDO investors and/or CDO Managers detailed in the list stolen from Deutsche Bank Securities' computers;

b.      enjoining Zeitlin from engaging in any business, whether as an employee, consultant, director or adviser, that is in direct or indirect competition with any active or planned business of Deutsche Bank Securities or any of its subsidiaries until November 2004;

18

     c.      enjoining Zeitlin from soliciting or enticing away any Deutsche Bank Securities employees until February 18, 2005;

     d.      enjoining JP Morgan Chase from soliciting or enticing away any Deutsche Bank Securities employees;

     e.      an award of punitive damages according to the proof at trial;

     f.      an award to Deutsche Bank Securities of its costs and expenses of this action; and

     g.      such other and further relief as the Court deems just.

### Jury Demand

Plaintiff hereby demands trial by jury of all issues.

Dated: October 6, 2004

DORSEY & WHITNEY LLP

By _____
Nathaniel H. Akerman (0241)
250 Park Avenue
New York, NY 10177
Telephone: (212) 415-9217
Facsimile: (212) 953-7201
E-mail: akerman.nick@dorsey.com

Attorneys for Plaintiff
Deutsche Bank Securities Securities, Inc.

4847-7728-8704\3